UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DEBORAH SANZARO and MICHAEL SANZARO,

Plaintiffs,

v.

ARDIENTE HOMEOWNERS ASSOCIATION LLC, et al.,

Defendants.

2:11-CV-01143-PMP-CWH

**ORDER**

Presently before the Court is Plaintiffs Deborah Sanzaro and Michael Sanzaro's Motion for Partial Summary Judgment (Doc. #92), filed on November 21, 2013. Defendants John Leach and Leach Johnson Song & Gruchow filed an Opposition (Doc. #99) on December 12, 2013. Defendants Ardiente Homeowners Association LLC, Scott Harris, Corona Ardiente LLC, James Marsh, Linda Kemper, Margo Hughen, Ryan Smith, Laury Phelps, RMI Management LLC, and Kevin Wallace filed a Joinder (Doc. #102) on December 13, 2013. Plaintiffs filed a Reply (Doc. #105) on December 27, 2013.

Also before the Court is Defendants John Leach and Leach Johnson Song & Gruchow's Counter Motion for Partial Summary Judgment (Doc. #100), filed on December 12, 2013. Defendants Ardiente Homeowners Association LLC, Scott Harris, Corona Ardiente LLC, James Marsh, Linda Kemper, Margo Hughen, Ryan Smith, Laury Phelps, RMI Management LLC, and Kevin Wallace filed a Joinder (Doc. #103) on December 13, 2013. Plaintiffs' Opposition is included within their Reply (Doc. #105), filed on December 27, 2013. Defendants did not file a Reply.

## I. BACKGROUND

Plaintiffs Michael Sanzaro ("Mr. Sanzaro") and his wife, Deborah Sanzaro ("Mrs. Sanzaro"), own property located within the Ardiente development, which is governed by Defendant Ardiente Homeowners Association LLC ("the HOA"). (Resp. to Mot. Partial. Summ. J. ["Counter MPSJ"] (Doc. #99), Ex. C at 1, Ex. D at 1.) Defendant Leach Johnson Song & Gruchow, a law firm in Las Vegas of which Defendant John Leach is a partner, represents the HOA. (Compl. (Doc. #78) at 7; Answer (Doc. #67) at 2.)

In March 2005, the Social Security Administration found Mrs. Sanzaro became disabled on March 12, 2004, when she became unable to walk unassisted, and granted her disability benefits. (Pls.' Mot. Partial Summ. J. (Doc. #92) ["MPSJ"], Aff. of Deborah Sanzaro in Supp. of MPSJ ["Mrs. Sanzaro Aff."] at 3, Ex. 1.) Mrs. Sanzaro requires the use of a walker and a leg brace, and she has chronic pain and reduced physical abilities. (Mrs. Sanzaro Aff. at 2.) In October 2008, Mrs. Sanzaro began searching for a dog to assist her with her pain levels and limited mobility. (Id. at 3.) Plaintiffs soon thereafter acquired a Chihuahua dog ("Angel"), and Mrs. Sanzaro experienced reduced pain levels while Angel sat on her lap. (Id. at 3-4.) Plaintiffs trained Angel to retrieve Mrs. Sanzaro's walker, cellular telephone, and dropped keys. (Id. at 4-5.) The issue in this case is whether Mrs. Sanzaro should be allowed to have Angel accompany her as a service animal in the HOA clubhouse. Plaintiffs' claims arise out of three incidents.[1]

Mrs. Sanzaro entered the clubhouse accompanied by Angel on March 10, 2009, and introduced herself to HOA staff as a disabled person, and Angel as a service animal. (Mrs. Sanzaro Aff. at 6-7, Ex. 5.) The first incident occurred after Mrs. Sanzaro and Angel entered the HOA clubhouse the following day. (Mrs. Sanzaro Aff. at 8.) Once inside,

[1] Though Plaintiffs' claims arise from three incidents, this is not the first dispute between Plaintiffs and the HOA. Mr. Sanzaro appears to have drawn the attention and discipline of the HOA beginning in August 2008 for various infractions, and the parties since have remained in conflict. (MPSJ, Aff. of Michael Sanzaro in Supp. of MPSJ, Ex. 4 at 1-14.)

Defendant Laury Phelps ("Phelps"), the HOA Community Manager at the time, approached Mrs. Sanzaro. (Counter MPSJ, Ex. C at 1-2.) According to Phelps, Phelps and asked why Mrs. Sanzaro needed Angel in the clubhouse. (Id.) Phelps states that after Mrs. Sanzaro did not respond, Phelps asked her to remove Angel from the clubhouse. (Id.) Mrs. Sanzaro then left, but returned with Angel thirty minutes later. (Id.) Phelps states she requested Mrs. Sanzaro to provide "documentation or information to confirm that [Mrs. Sanzaro] was disabled and the dog was a service animal," but Mrs. Sanzaro refused to do so. (Id. at 2.) According to Mrs. Sanzaro, Phelps never requested proof that Angel was a service animal, but rather ordered both of them to leave the clubhouse. (Mrs. Sanzaro Aff. at 8.) Mrs. Sanzaro claims she showed Phelps a "service dog patch on the handle of Angel's leash" and refused to leave. (Id.) The parties agree that Phelps ultimately called security to escort Mrs. Sanzaro out of the clubhouse. (Id. at 8-9; Counter MPSJ, Ex. C at 1-2.)

The HOA held an open hearing regarding the first incident on March 30, 2009, and invited Mrs. Sanzaro to attend the hearing and present evidence of her disability and Angel's certification as a service animal. (Counter MPSJ, Exs. C-E.) Mrs. Sanzaro neither attended the hearing nor sent any documentation on her behalf, and counsel for the HOA mailed the results to Plaintiffs on April 9, 2009. (Id., Ex. F.) The HOA issued a fine, but the HOA offered to retract the fine if Mrs. Sanzaro either ceased bringing Angel into the clubhouse, or provided evidence showing that she is handicapped and that Angel is necessary for Mrs. Sanzaro to enjoy the clubhouse. (Id.)

On July 27, 2009, prior to the second and third incidents, Plaintiffs sent the HOA's counsel copies of letters from the Social Security Administration and Mrs. Sanzaro's physician stating that Mrs. Sanzaro is disabled.[2] (MPSJ, Aff. of Michael Sanzaro in Supp. of MPSJ ["Mr. Sanzaro Aff."] at 4, Ex. 7.) Plaintiffs also sent a statement from

---

[2] Plaintiffs sent the letters as part of an arbitration process with the Nevada Real Estate Division on the same issue as in this case. (Counter MPSJ, Ex. J.)

another doctor requesting that Angel is "authorized to be registered as a service dog under the guidelines of the Americans with Disabilities Act," and a veterinarian's statement certifying that Angel has received the necessary shots and will not be a threat to the general public. (Id., Ex. 7.) Plaintiffs also sent a letter from Mrs. Sanzaro, in which she explains that Angel was trained to assist her by retrieving her walker in the event it rolls away or falls over. (Id.) Mrs. Sanzaro also explains that she chose a Chihuahua because the dog's small size "would give me comfort and companionship as well as assist me with my disabilities . . . without causing pain." (Id.) Mrs. Sanzaro further states in her letter that "Angel will continue to receive training to learn new tasks to assist me with my disabilities" and that Angel was in the process of learning to retrieve Mrs. Sanzaro's cellular telephone in an emergency. (Id.)

The second incident occurred on July 26, 2010, when Mrs. Sanzaro, accompanied by Angel, entered the HOA clubhouse to pick up a device for the HOA gates. (Mrs. Sanzaro Aff. at 9-10.) According to Mrs. Sanzaro, Phelps again ordered Angel out of the clubhouse and demanded proof of Mrs. Sanzaro's disability and Angel's training. (Id.) Mrs. Sanzaro explained that she is "disabled and that [her] dog is trained to assist [her] with [her] disability and that [her] dog is a registered service animal." (Id. at 10.) Mrs. Sanzaro initially complied with Phelps' order to leave, but she then returned with Mr. Sanzaro, who told Phelps that he sent documents to the HOA's counsel to prove Mrs. Sanzaro was disabled. (Id.) Mr. Sanzaro also told Phelps he sent "a letter explaining how 'Angel' [Mrs. Sanzaro's] service animal was trained to assist [Mrs. Sanzaro] with her disabilities" and "that 'Angel' is undergoing continued training." (Id.) Phelps once again asked security to escort Plaintiffs from the clubhouse, though this time Plaintiffs refused to leave until Phelps called the police. (Id. at 10-11.)

The third incident occurred on January 29, 2011, when Mrs. Sanzaro, accompanied by Angel and Mr. Sanzaro, went to the HOA clubhouse to use the library.

(Mr. Sanzaro Aff. at 5; Mrs. Sanzaro Aff. at 11-12.) The new Community Manager, non-party Mr. Winkel, denied Plaintiffs access to the clubhouse because Plaintiffs had not provided documents proving Mrs. Sanzaro was disabled and Angel was a service animal. (Mr. Sanzaro Aff. at 5.) Mr. Sanzaro "told the community manager how Angel was trained to assist [Mrs. Sanzaro] with her disabilities," but Mr. Winkel did not permit Plaintiffs to enter. (Id.) Plaintiffs then left the clubhouse. (Id.)

Based on these incidents, Plaintiffs brought 102 causes of action for "discrimination against the disabled, breach of contract and other torts," including claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-19. (Compl. (Doc. #78) at 1, 9-19, 51.) This Court previously dismissed Plaintiffs' suit, and judgment was entered in favor of Defendants on all claims. (Order (Doc. #33); Clerk's J. (Doc. #34).) On appeal, the United States Court of Appeals for the Ninth Circuit held the HOA clubhouse is a public place under the ADA and vacated this Court's dismissal of Plaintiffs' claims under the ADA and the FHA. (Mem. (Doc. #55) at 2-4.) The parties now bring cross-motions for partial summary judgment on Plaintiffs' FHA claims in counts one, six, and eleven.

## II. DISCUSSION

Plaintiffs move for partial summary judgment on their FHA claims, arguing the HOA violated the FHA by prohibiting Mrs. Sanzaro from bringing Angel into the HOA clubhouse. Plaintiffs argue that Mrs. Sanzaro is disabled, that she informed the HOA of her disability, and that she informed the HOA that Angel is a service animal necessary for her use and enjoyment of the clubhouse. Plaintiffs further argue the HOA rules already allow for service animals in the clubhouse and that they therefore need not request an accommodation or waiver of the rules. Plaintiffs further argue federal law prohibits the HOA from demanding documents or other proof that Angel is a service animal, and Plaintiffs already have provided adequate information to the HOA. Finally, Plaintiffs argue

that Defendants' discriminatory actions are retaliation for Plaintiffs' prior complaints on other matters.

Defendants respond that partial summary judgment in Plaintiffs' favor for the FHA claims is inappropriate because there are material facts in dispute. Defendants further respond that Plaintiffs incorrectly cite to the ADA, not the FHA. Defendants contend that Plaintiffs have the burden to request an accommodation, establish handicapped status, and establish the connection between the disability and the requested accommodation. According to Defendants, Plaintiffs never provided Defendants with the requisite information, despite Defendants' numerous requests. Based on these same arguments, Defendants contend they are entitled to partial summary judgment on the FHA claims.

Plaintiffs reply that Defendants failed to show a genuine issue of material fact and failed to respond to Plaintiffs' arguments that Mrs. Sanzaro is disabled, Angel is a service animal, and the HOA rules allow service animals in the clubhouse. Plaintiffs further reply that Plaintiffs do not need to request an accommodation for Angel because the HOA rules already allow service animals in the clubhouse. Plaintiffs contend that because they are not requesting an accommodation, Defendants cannot ask for documentation and evidence of Mrs. Sanzaro's disability and Angel's service animal status.

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarmo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Initially, the moving party bears the burden of proving there is no genuine issue

of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). The moving party may discharge its burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)); see also Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) (stating that "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial"). After the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Leisek, 278 F.3d at 898. The Court views all evidence in the light most favorable the non-moving party. Id.

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap" of that person or any person associated with that person. 42 U.S.C. § 3604(f)(2). Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling . . . ." Id. § 3604(f)(3)(B); 24 C.F.R. § 100.204.

A plaintiff must prove five elements to prevail on an FHA claim under § 3604(f)(3)(B): "(1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation." DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua, 453 F.3d

1175, 1179 (9th Cir. 2006). "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." Id. (quoting United States v. Cal. Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir. 1997)).

**A. Handicap under § 3602(h) and Defendants' Knowledge of Handicap**

The FHA defines a handicap as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h). "Major life activities means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201(b).

Even viewing the evidence in the light most favorable to Defendants, no genuine issue of fact remains that Mrs. Sanzaro was handicapped during the incidents giving rise to Plaintiffs' claims. Plaintiffs submit a letter from Mrs. Sanzaro's physician identifying her disabled status, as well as a letter from the Social Security Administration stating that Mrs. Sanzaro became disabled on March 12, 2004. (Mrs. Sanzaro Aff., Exs. 1-2.) Mrs. Sanzaro's affidavit provides her history of back surgeries, nerve damage, chronic pain, and lack of mobility. (Mrs. Sanzaro Aff. at 1-3.) Mrs. Sanzaro's major life activity of walking is impaired by the necessity of a walker and leg brace at all times. (Id. at 2.) Defendants present no evidence or argument that Mrs. Sanzaro was not disabled at the time of the incidents. The Court therefore finds as a matter of law that Mrs. Sanzaro was handicapped under the FHA standard at the time of all three incidents. See, e.g., Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 67 (1st Cir. 2010) (finding the plaintiffs were handicapped because of their "significant mobility problems," including difficulty walking and requiring a cane for assistance).

Additionally, even viewed in the light most favorable to Defendants, the evidence demonstrates Defendants knew or reasonably should have known of Mrs. Sanzaro's

handicap. Mrs. Sanzaro states that she cannot walk without the assistance of a walker and a leg brace, thus her impairment would be noticeable immediately upon viewing her using the walker and brace. Plaintiffs also present a report from a North Las Vegas police officer who found that after "casual observation of Mrs. Sanzaro, it is apparent she has a disability and has moderate to extensive physical challenges." (MPSJ, Ex. 7 at 4.) Further, Plaintiffs' fax to the HOA's counsel included copies of letters from Mrs. Sanzaro's doctor and the Social Security Administration, indicating Mrs. Sanzaro's handicapped status, as well as Mrs. Sanzaro's statement regarding her disabilities and required use of a walker. (Mr. Sanzaro Aff., Ex. 7.)

Defendants present no evidence that they were unaware of Mrs. Sanzaro's handicap at the time of the incidents, and argue only that Mrs. Sanzaro did not provide documentation. However, considering the necessarily visible nature of Mrs. Sanzaro's handicap, for which she requires the use of a walker and leg brace to walk, Defendants knew or should have known of Mrs. Sanzaro's handicap regardless of whether Plaintiffs provided documentation. The Court therefore finds as a matter of law that Defendants knew or reasonably should have known of Mrs. Sanzaro's handicap.

**B. Necessity of a Reasonable Accommodation and Defendants' Refusal**

The parties agree that allowing a service animal in the clubhouse is a reasonable accommodation, as the HOA rules already authorize such an accommodation. (Counter MPSJ, Ex. B.) The parties also agree that the HOA has refused to allow Mrs. Sanzaro to bring Angel into the clubhouse. Having found Mrs. Sanzaro is handicapped, and the HOA knew or should have known of her handicap, the question is whether Angel may be necessary for Mrs. Sanzaro's enjoyment of the clubhouse.

Plaintiffs argue that Mrs. Sanzaro introducing Angel as her service animal and showing the HOA Angel's service animal registration is sufficient notice. Additionally, Plaintiffs argue they are not requesting an accommodation because the HOA already allows

service animals in the clubhouse, therefore Plaintiffs are not required to demonstrate the need for the accommodation. The HOA does not take a position on whether Angel is a service animal, rather the HOA contends Plaintiffs did not meet their burden of proving Mrs. Sanzaro's need for Angel to accompany her into the clubhouse.

Animals may be reasonable accommodations, provided the animal performs a function that provides a necessary benefit or aid to a handicapped individual. See Bronk v. Ineichen, 54 F.3d 425, 429 (7th Cir. 1995); United States v. Cal. Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1417 (9th Cir. 1994). A regulation implementing the ADA employs the title of "service animal" to describe dogs who have been trained to assist disabled individuals. 28 C.F.R. § 36.104. However, neither the FHA nor federal regulations implementing the law define "service animal" or explain how an animal qualifies as a reasonable accommodation, and the regulations provide only one example. 24 C.F.R. § 100.204(b)(1) (providing example of a seeing eye dog for a blind person seeking rental housing).

The Department of Housing and Urban Development ("HUD") has issued guidelines and procedures regarding service animal accommodations under the FHA in its handbook for HUD-subsidized multifamily properties. See U.S. Dep't of Hous. & Urban Dev., HUD Handbook 4350.3: Occupancy Requirements of Subsidized Multifamily Housing Programs ["HUD Handbook"] (2013).[3] The HUD handbook uses the term "assistance animal" in lieu of service animal and provides an expansive definition:

> Assistance Animals are not pets. They are animals that work, provide assistance, or perform tasks for the benefit of a person with a disability, or animals that provides [sic] emotional support that alleviates one or more identified symptoms or effects of a person's disability. Assistance animals – often referred to as "service animals," "assistance animals," "support animals," or "therapy animals" – perform many disability-related functions, including but not limited to . . . fetching items . . . or providing emotional support to persons with disabilities

[3] Available at http://www.hud.gov/offices/adm/hudclips/handbooks/hsgh/4350.3/index.cfm.

> who have a disability-related need for such support.

Id. at 2-41. The handbook further states an assistance animal does not require a certain form of training:

> A housing provider may not refuse to allow a person with a disability to have an assistance animal merely because the animal does not have formal training. Some, but not all, animals that assist persons with disabilities are professionally trained. Other assistance animals are trained by the owners themselves and, in some cases, no special training is required. The question is whether or not the animal performs the disability-related assistance or provides the disability-related benefit needed by the person with the disability.

Id.

The HUD handbook grants housing providers the right to verify the need for an assistance animal by requiring the "resident to provide documentation of the disability and the need for the animal from an appropriate third party, such as a medical provider, mental health provider, or other professional in a position to provide this verification." Id. at 3-77. An exception to verification exists "if the disability is [sic] or the need is readily apparent or already known to the provider." Id.

Similarly, HUD and the Department of Justice ("DOJ") have issued guidelines permitting housing providers to obtain information that is "necessary to evaluate if a requested reasonable accommodation may be necessary because of a disability." See Joint Statement on Reasonable Accommodations Under the FHA ["Joint Statement"] at 12 (May 17, 2004).[4] Such a request for information is permitted only where the disability or the need for the accommodation is not readily apparent or known. Id. at 13. The Joint Statement provides an example similar to the present situation:

> **Example 2:** A rental applicant who uses a wheelchair advises a housing provider that he wishes to keep an assistance dog in his unit even though the provider has a "no pets" policy. The applicant's disability is readily apparent but the need for an

[4] Available at http://www.hud.gov/offices/fheo/library/huddojstatement.pdf (last visited May 20, 2014).

> assistance animal is not obvious to the provider. The housing provider may ask the applicant to provide information about the disability-related need for the dog.

Id. However, the Joint Statement does not provide detail on what information is appropriate and sufficient to demonstrate a need for an assistance animal.

Likewise, case law does not provide a clear standard for what evidence establishes a disability-related need for an assistance animal.[5] In Prindable v. Association of Apartment Owners of 2987 Kalakaua, a condominium association refused to allow the plaintiffs to keep their dog as an accommodation for a mental illness because of the plaintiffs' failure to provide adequate evidence of a disability-related need. 304 F. Supp. 2d 1245, 1248-51, 1257 (D. Haw. 2003). Prindable adopted and applied the ADA standard for a service animal, which requires proof of individualized training, and held "[u]nsupported averments from [the animal's owner] and slight anecdotal evidence of service are not enough . . . to satisfy Plaintiffs' burden in opposition to summary judgment." Id. at 1256-57 (citing 28 C.F.R. § 36.104). The Prindable court granted summary judgment on the plaintiffs' FHA claims in favor of the defendants because the plaintiffs did not provide proof the animal was individually trained. Id. On appeal, the Ninth Circuit upheld summary judgment, but only on the basis that the defendants never refused to make the accommodation because the association temporarily allowed the plaintiffs to keep their dog, and the plaintiffs thus could not prove all five elements of an FHA claim. Dubois, 453 F.3d at 1179.

The District of Hawaii later declined to apply the ADA standard used in Prindable for an FHA claim. Ass'n of Apartment Owners of Liliuokalani Gardens at Waikiki v. Taylor, 892 F. Supp. 2d 1268, 1286 (D. Haw. 2012). The Taylor court reasoned Prindable

---

[5] This may be explained by the fact that housing providers are encouraged to "cooperate with residents to resolve disputes over reasonable accommodations rather than turning to the courts." Overlook Mut. Homes, Inc. v. Spencer, 415 F. App'x 617, 623 (6th Cir. 2011).

did not apply because the Prindable plaintiffs alleged their dog was a "service animal," while the Taylor plaintiffs sought an accommodation for an "assistance animal." Id. at 1285-86. Taylor also noted "the concept of an 'assistance animal,' distinguishable from a 'service animal,' is a relatively recent occurrence and has become more prominent in the law in the nine years since the district court decided Prindable." Id. at 1286. Whether the animal in Taylor qualified as an assistance animal or reasonable accommodation was not at issue, but the court noted such a determination would "depend largely on the determination of Taylor's disability and the accommodation necessary to ameliorate the effects of the disability." Id. at 1288.

Other courts have agreed with Taylor's conclusion that the FHA standard is different than the ADA standard for animals. See Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt., Inc., 778 F. Supp. 2d 1028, 1036 (D.N.D. 2011) ("Upon a careful review of the other judicial opinions in this area, the DOJ's explanations of its interpretation of the FHA and corresponding ADA, and after giving deference to HUD's regulations regarding the meaning of the FHA, the Court finds the FHA encompasses all types of assistance animals regardless of training . . . ."); Green v. Hous. Auth. of Clackamas Cnty, 994 F. Supp. 1253, 1256 (D. Or. 1998) (finding the housing authority's "requirement that an assistance animal be trained by a certified trainer of assistance animals, or at least by a highly skilled individual, has no basis in law or fact" for an FHA claim). Courts make this distinction because the two statutes serve "distinct purposes." Fair Hous. of the Dakotas, 778 F. Supp. 2d at 1035. "While both the ADA and FHA prohibit discrimination on the basis of disability, it is not unexpected that different rules might govern in public places versus private dwellings." Id. (citing Overlook Mut. Homes, Inc. v. Spencer, 666 F. Supp. 2d 850, 859 (S.D. Ohio 2009)).

Given the differences in the applicable regulations and the guidance from HUD and DOJ, the Court concludes that no special training is required for an animal to qualify as

a service or assistance animal for FHA purposes. Rather, the relevant inquiry under the FHA is whether the animal "performs the disability-related assistance or provides the disability-related benefit needed by the person with the disability." HUD Handbook 4350.3 at 2-41. Whether the animal performs such services or provides such a benefit generally is a question of fact. See Bronk, 54 F.3d at 429. Further, a housing provider may ask for documentation of the disability, or the need for an assistance animal, if the disability, the need, or both are not apparent. HUD Handbook 4350.3 at 3-77; Joint Statement at 13. Whether the information provided is sufficient to establish the disability and need in any particular case generally is a fact question for the jury. See id.; DuBois, 453 F.3d at 1179 ("The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination.") (quotation omitted).

Viewing the facts in the light most favorable to Defendants on Plaintiffs' Motion, a reasonable jury could find the HOA was justified in asking how Angel assisted Mrs. Sanzaro in enjoying the clubhouse. Although Mrs. Sanzaro's disability is apparent, a reasonable jury could find that it was not apparent how Angel, a small Chihuahua, assisted Mrs. Sanzaro with her mobility-related handicap. A reasonable jury could find Mrs. Sanzaro's introduction of Angel as a service animal, as well as her display of the patch, did not indicate how Angel aids or benefits Mrs. Sanzaro, or why Mrs. Sanzaro needs such assistance in the clubhouse. A reasonable jury could also find the letter from a doctor requesting that Angel be authorized to be registered as a service animal does not establish that Angel is Mrs. Sanzaro's service animal, as it does not state that Angel is trained to assist Mrs. Sanzaro with her disability-related needs. Further, a reasonable jury could find the veterinarian's statement indicates only that Angel has received all of the necessary shots and vaccinations and that Angel will not be a threat to the public, and not how Angel has been trained to assist Mrs. Sanzaro with her disability-related needs. Mrs. Sanzaro's letter explaining Angel's training and how it benefits her disability, without a letter from a

medical professional corroborating such training or how the animal provides a service or benefit related to the disability, is insufficient for the Court to rule in Plaintiffs' favor as a matter of law. See Bronk, 54 F.3d at 431; HUD Handbook 4350.3 at 3-77 (housing provider may require "documentation of the disability and the need for the animal from an appropriate third party, such as a medical provider, mental health provider, or other professional"). The Court therefore will deny Plaintiffs' Motion.

Viewing the facts in the light most favorable to Plaintiffs on Defendants' Motion, there remain genuine issues of fact as to whether Phelps requested information during the first incident to support Mrs. Sanzaro's need for Angel, as opposed to asking only for certification of training, which is not required under the FHA. Additionally, with respect to the second and third incidents, a reasonable jury could find Defendants had adequate information regarding Angel's training as an assistance animal and how the dog provided a service or benefit necessary for Mrs. Sanzaro to enjoy the clubhouse. The veterinarian and doctor's statements Plaintiffs sent to the HOA establish that Angel could be registered as a service dog and that Angel has current vaccinations. Further, Plaintiffs provided a letter from Mrs. Sanzaro describing Angel's training to assist Mrs. Sanzaro, particularly that Angel can retrieve Mrs. Sanzaro's walker if it rolls away or falls down, and that Angel was being trained to retrieve a cellular telephone in case of an emergency. During the second and third incidents, Plaintiffs again explained to the community managers how Angel was trained to assist Mrs. Sanzaro, and that Angel received ongoing training. The Court therefore will deny Defendants' Motion.

///

///

///

///

///

## III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs Deborah Sanzaro and Michael Sanzaro's Motion for Partial Summary Judgment (Doc. #92) is hereby DENIED.

IT IS FURTHER ORDERED that Defendants Leach Johnson Song & Gruchow and John Leach's Counter Motion for Summary Judgment (Doc. #100) is hereby DENIED.

DATED: May 23, 2014

PHILIP M. PRO
United States District Judge