UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DEBORAH SANZARO and MICHAEL SANZARO,<br><br>                           Plaintiffs,<br><br>    v.<br><br>ARDIENTE HOMEOWNERS ASSOCIATION, LLC, A NEVADA NON-PROFIT CORPORATION; SCOTT HARRIS, Declarant and former Ardiente HOA Board Member, CORONA ARDIENTE LLC, Declarant; SHEA HOMES LLC, Declarant; JAMES MARSH and LINDA KEMPER former Ardiente HOA Board Presidents; MARGO HUGHEN, present Ardiente HOA Board President; RYAN SMITH, Ardiente HOA Board Member; LAURY PHELPS, former community Manager and employee; RMI MANAGEMENT LLC; KEVIN WALLACE, Law Firm of LEACH JOHNSON SONG & GRUCHOW; JOHN LEACH<br>                             Defendants. | Case No. 2:11-cv-01143-RFB-CWH<br><br>ORDER |

## I.    INTRODUCTION

Before the Court are the following motions:

1.      Motion to Reconsider Order (ECF No. 115) by Plaintiffs. ECF No. 118.

2.      Motion for Default Judgment against Defendant J.F. Shea Co., Inc. ECF No. 139.

3.      Motion for Partial Summary Judgment (titled "Motion to grant five orders") by Plaintiffs. ECF No. 145.

4      Motion for Summary Judgment by Defendant J.F. Shea Co., Inc., ECF No. 154.

5.     Motion to Amend/Correct re: Answer by Defendant J.F. Shea Co., Inc. ECF No.

223.

6.      Motion for Summary Judgment by Defendants John Leach, Leach Johnson Song & Gruchow on March 25, 2015. ECF No. 225.

7.      Motion to Reconsider Order (ECF No. 209) by Defendants John Leach, Leach Johnson Song & Gruchow. ECF No. 212. Motion for District Judge to Reconsider Order (ECF No. 228) by Plaintiffs. ECF No. 231.

8.      Motion for Summary Judgment by Defendant Ardiente Homeowners Association, ECF No. 255.

9.      Motion to Reconsider Order (ECF No. 33) by Plaintiffs. ECF No. 293.

## II.     BACKGROUND

The Plaintiffs in this case are Deborah and Michael Sanzaro. Plaintiffs' Complaint arises from three separate incidents from 2009 through 2011 wherein the Defendant Ardiente Homeowners Association ("the HOA") denied Plaintiff Deborah Sanzaro and her alleged service animal, Angel, entry into the Ardiente clubhouse ("the HOA clubhouse").

In their most recent Complaint (ECF No. 78), Plaintiffs bring 102 causes of action for "discrimination against the disabled, breach of contract and other torts," including claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, and the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-19, and NRS 651.075, precluding places of public accommodation from refusing admittance to a person with a service animal.

This Court previously dismissed Plaintiffs' suit, and judgment was entered in favor of Defendants on all claims. ECF No. 33. On appeal, the Ninth Circuit affirmed in part and reversed and remanded in part. ECF No. 55 at 2-4. As a result, the only remaining seven causes of action are those arising under or with reference to the FHA and ADA, including a claim under Nevada Revised Statute § 651.075. These causes of action are Claims 1, 2, 6, 7, 11, 12, and 71 and relate to three incidents that took place on March 11, 2009 ("Incident 1"), July 26, 2010 ("Incident 2"), and January 29, 2011 ("Incident 3"). The Court addresses each below.

First, Plaintiffs bring an ADA discrimination claim against Defendants for preventing

Deborah Sanzaro from entering the HOA clubhouse accompanied by Angel during all three Incidents. Plaintiffs also allege that Defendants violated their rights under the ADA when Defendants: required proof that Angel was a service animal during all three Incidents; required proof of Deborah Sanzaro's disability during Incident 3; and required that Deborah Sanzaro produce a doctor's letter verifying Deborah Sanzaro's need for a service animal in order to enter the HOA club house.

Second, Plaintiffs bring an FHA discrimination claim under what the Court understands to be a disparate impact theory and failure to provide reasonable accommodation to Deborah Sanzaro from entering the HOA clubhouse accompanied by Angel during all three Incidents. Plaintiffs allege that Defendants violated their rights under the FHA when they required proof that Angel was a service animal during all three Incidents, and when they required proof of Deborah Sanzaro's disability during Incident 3.

Third, Plaintiffs bring an NRS 651.075 discrimination claim against Defendants for preventing Deborah Sanzaro from entering the HOA clubhouse accompanied by Angel during all three Incidents. Plaintiffs also allege that Defendants violated their rights under the NRS 651.075 when Defendants: required proof that Angel was a service animal during all three Incidents; and required that Deborah Sanzaro produce a doctor's letter verifying Deborah Sanzaro's need for a service animal in order to enter the HOA club house.

Last, Plaintiff asserts Claim 71 against the law firm Leach, Johnson, Song and Gruchow for failing to properly advise the HOA not to violate federal and state statutes such as the ADA, FHA, and NRS 650.050 to protect the disabled.

Plaintiffs seek monetary relief as well as injunctive relief enjoining the Defendants from denying Deborah Sanzaro access to the clubhouse while accompanied by Angel, her alleged service animal.

### III.    PROCEDURAL HISTORY

Plaintiffs filed their Complaint *pro se* on July 11, 2011 alleging 102 causes of action. ECF No. 1. On November 18, 2011, the Honorable Philip M. Pro granted Defendant Leach Johnson

Song & Gruchow's Motion to Dismiss the case in its entirety. ECF No. 33. Plaintiffs appealed this decision. The Ninth Circuit affirmed in part, vacated, and remanded this Order, reversing and remanded causes of action under the FHA and ADA. ECF No. 55. Plaintiffs refiled their Complaint on July 22, 2013. ECF No. 78.

Plaintiffs filed a Motion for Partial Summary Judgment on November 21, 2013. ECF No. 92. The Court denied this Motion on May 23, 2014. ECF No. 115. Plaintiffs filed a Motion to Reconsider this Order on June 2, 2014. ECF No. 118.

Plaintiffs filed a Motion for Default Judgment on July 29, 2014. ECF No. 139.

Plaintiff filed a "Motion to grant five orders," which the Court construes as a Motion for Partial Summary Judgment on August 28, 2014. ECF No. 145.

On October 16, 2014, Defendant J.F. Shea filed a Motion for Summary Judgment. ECF No. 154.

On February 23, 2015, Defendants John Leach and Leach Johnson Song & Gruchow filed a Motion to Reconsider. ECF No. 212.

Defendant J.F. Shea Co., Inc. filed a Motion to Amend/Correct re: Answer on March 25, 2015. ECF No. 223.

Defendants John Leach and Leach Johnson Song & Gruchow filed a Motion for Summary Judgment on March 25, 2015. ECF No. 225.

Plaintiffs filed a Motion to Reconsider an Order (ECF No. 228) on April 20, 2015. ECF No. 231.

On May 18, 2015, Plaintiff filed a Motion in limine. ECF No. 248.

On June 1, 2015, Defendants HOA filed a Motion for Summary Judgment. ECF No. 255.

On September 30, 2015, the Court held a hearing regarding a number of outstanding motions and held the following:

1. The Court DENIED Plaintiffs' Motion to Reconsider Order ECF No. 115. ECF No. 118.

2. The Court DENIED Plaintiffs' Motion for Default Judgment. ECF No. 139.

3. The Court GRANTED in part and DENIED in part Plaintiffs' Motion for Partial

Summary Judgment. ECF No. 145.

4. The Court DENIED as moot Defendant John Leach and Leach Johnson Song & Gruchow's Motion to Reconsider. ECF No. 212.

5. The Court GRANTED Defendant J.F. Shea Co., Inc.'s Motion to Amend. ECF No. 223.

6. The Court GRANTED Defendants John Leach and Leach Johnson Song & Gruchow's Motion for Summary Judgment. ECF No. 225.

7. The Court DENIED Plaintiffs' Motion to Reconsider Order ECF No. 228. ECF No. 231.

The Court has indicated that it would issue its written opinion on these motions prior to trial. This case has been reset for trial on a few different occasions subsequent to the Court's ruling. As the trial is now set for January the Court issues its written opinion with regard to its previous oral and minute orders on the above motions.

## IV. FACTUAL FINDINGS

For these motions, the Court makes the following factual findings.

### A. Undisputed Facts

The Court finds the following facts to be undisputed. Plaintiffs Deborah and Michael Sanzaro are the owners of the property located at 3609 Inverness Grove Avenue, Las Vegas, NV APN # 123-30-312-011, located in the Ardiente development. The HOA clubhouse is located in this development and is accessible by Ardiente members and their guests.

In March 2005, the Social Security Administration found Deborah Sanzaro became disabled on March 12, 2004, when she became unable to walk unassisted, and granted her disability benefits. Deborah Sanzaro requires the use of a walker and a leg brace, and she has chronic pain and reduced physical abilities. In October 2008, Deborah Sanzaro began searching for a dog to assist her with her pain levels and limited mobility. Plaintiffs soon thereafter acquired a Chihuahua dog ("Angel").

On March 11, 2009, Plaintiff Deborah Sanzaro entered the HOA with Angel. The manager

requested documentation to confirm her disability and that the dog was a service animal. Plaintiff showed the manager a service dog patch attached to the handle of Angel's leash. The manager decided that Plaintiff had not produced the requested and required documentation. Plaintiff left the clubhouse and returned 30 minutes later with Angel. The manager called the HOA's security to the clubhouse to escort Plaintiff from the clubhouse.

The HOA held an open hearing regarding Incident 1 on March 30, 2009 and invited Deborah Sanzaro to attend the hearing and present evidence of her disability and Angel's certification as a service animal. Deborah Sanzaro neither attended the hearing nor sent any documentation on her behalf. Counsel for the HOA mailed the results to Plaintiffs on April 9, 2009. The HOA issued a fine, but offered to retract the fine if Deborah Sanzaro either ceased bringing Angel into the clubhouse, or provided evidence showing that she is disabled and that Angel is necessary for Deborah Sanzaro to enjoy the clubhouse.

On July 27, 2009, prior to Incidents 2 and 3, Plaintiffs sent the HOA's counsel copies of letters from the Social Security Administration and Deborah Sanzaro's physician stating that Deborah Sanzaro is disabled. Plaintiffs also sent a statement from another doctor stating that Angel is "authorized to be registered as a service dog under the guidelines of the Americans with Disabilities Act," and a veterinarian's statement certifying that Angel has received the necessary shots and will not be a threat to the general public.

On July 26, 2010 a similar incident occurred when Plaintiff Deborah Sanzaro entered the clubhouse with Angel and was asked to provide documentation of Plaintiff's disability and Angel's training by the same manager. Plaintiff explained she was disabled and claimed her dog was a registered service animal trained to assist her with her disability. Plaintiff left and returned with her husband, Plaintiff Michael Sanzaro, who told the manager he had sent a letter explaining how Angel was a service animal trained to aid his wife with her disability. Plaintiffs refused to leave until an employee called the Police.

On January 29, 2011, Plaintiffs attempted to enter the HOA clubhouse with Angel. The new community manager denied Plaintiffs access claiming the Plaintiffs had not provided documents proving Plaintiff's disability and that Angel was a service animal. Michael Sanzaro

again explained the Angel was trained to assist his wife with her disabilities but Plaintiffs were not permitted entrance.

The parties do not dispute that J.F. Shea Co., Inc. ever employed any board members of the HOA.

### B. Disputed Facts

The parties dispute several key facts. First, they dispute whether Angel was a service animal trained to assist Plaintiff with her mobility-related disability at the time the three incidents took place at the HOA clubhouse. The parties dispute whether on March 10, 2009, the Plaintiff entered the clubhouse with Angel, explaining Angel's status as a service animal and Plaintiff's disability, without objection by the manager. The parties also dispute whether J.F. Shea Co., Inc. is a declarant of the HOA.

## V.    SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

At summary judgment, "a nonmoving party plaintiff has no obligation to produce anything until the moving party defendant has carried its initial burden of production." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1107 (9th Cir. 2000). The moving party defendant carries its initial burden of production by (1) producing evidence negating an essential element of the nonmoving party's claim, or (2) after discovery, showing "that the nonmoving party [plaintiff] does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Id. at 1106.

To carry the burden of production under either method, the moving party must identify particular portions of the pleadings or evidence on file that it "believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 324. "The [Supreme] Court held that defendant Celotex could meet its initial burden of production by showing—that is, pointing out to

the district court—that there is an absence of evidence to support the nonmoving party's case." Nissan Fire & Marine, 210 F.3d at 1105.

If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). "In considering a motion for summary judgment, of course, the court decides a pure question of law and is not permitted to weigh the evidence or to judge the credibility of witnesses." Neely v. St. Paul Fire & Marine Ins. Co., 584 F.2d 341, 344 (9th Cir. 1978).

The party seeking the admission of documents on motion for summary judgment bears the burden of proof to show their admissibility. Hooper v. Lockheed Martin Corp., 688 F.3d 1037, 1051 (9th Cir. 2012). "It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

However, "[w]here . . . the *moving party* bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis in original) (citations omitted). The standard for a directed verdict "under Federal Rule of Civil Procedure 50(a) . . . is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. . . . If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986) (citations omitted).

## VI. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 145

The Court construes Plaintiffs' Motion for Five Orders (ECF No. 145) as a Motion for Partial Summary Judgment, as Plaintiff requests that the Court find certain issues as a matter of law. Plaintiffs request the following:

1.     That the Court find as a matter of law under the ADA, FHA, and NRS 651.070 that Angel was a service animal at the time the three incidents took place.

2.     That the Defendants wrongly required that Plaintiffs provide documentation that Angel is a service animal as a requirement for Plaintiff to enter the HOA clubhouse accompanied by her animal under the FHA, ADA, and NRS 651.070.

3.     That it is a violation of the ADA and NRS 651.070 for Defendants to ask for a doctor's letter verifying the need for a service animal in order to enter the HOA club house.

4.     That it is a violation of the FHA and ADA for Defendants to require documentation to prove Deborah Sanzaro is disabled.

5.     That Defendants are not entitled to indemnity.

However, Plaintiffs voluntarily withdrew their fifth request at the oral hearing on August 19, 2014. Therefore, the Court does not address the fifth request in this Order.

The Court first addresses the second, third, and fourth requests and structures its analysis based on the three claims Plaintiffs bring under the ADA, FHA, and NRS. The Court then addresses the discrete legal issue of whether Angel is a service animal under the applicable statutes.

**A. Plaintiffs' Claims Under the ADA**

    **a. Legal Standard**

Title III of the ADA prohibits discrimination in public accommodations, stating that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); Kohler v. Bed Bath & Beyond of California, LLC, 780 F.3d 1260, 1263 (9th Cir. 2015) (quoting Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007)). To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability. Molski, 481 F.3d at 730.

In the context of ADA discrimination claims pertaining to service animals in particular, the Ninth Circuit has held that "'[d]iscrimination' is defined as, among other things, 'a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . .' 42 U.S.C. § 12182(b)(2)(A)(ii). The Department of Justice has issued regulations stating that, '[g]enerally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability.' 28 C.F.R. § 36.302(c)(1). By this regulation the Department of Justice intended that 'the broadest feasible access be provided to service animals in all places of public accommodation . . . .' 28 C.F.R. Pt. 36, App. B at 697." Lentini v. California Ctr. for the Arts, Escondido, 370 F.3d 837, 843 (9th Cir. 2004) (alteration in original). However, failure to make such modifications does not always constitute discrimination where the entity "'can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations . . . .' 42 U.S.C. § 12182(b)(2)(A)(ii)." Id. at 844 (alteration in original). The Supreme Court has articulated different inquiries to make this determination: "whether it is 'necessary' for the disabled individual, and whether it would 'fundamentally alter the nature of' the [goods, services, etc.]."" Id. (quoting PGA Tour, Inc. v. Martin, 532 U.S. 661, 683 n. 38 (2001)).

**b. Analysis**

The ADA provides that "[a] public accommodation shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal." 28 C.F.R. § 36.302. Lentini, 370 F.3d at 839. Therefore, as a threshold matter, it must be determined whether or not the HOA clubhouse was a public accommodation.

Plaintiffs argue that certain areas within the development, including the clubhouse, are open to the general public.[1] ECF No. 13 at 1. Deborah Sanzaro states in a sworn affidavit that

---

[1] Plaintiffs have also provided evidence that the Defendants advertised online to members of the public an opportunity to "Test Drive" the development, including "unlimited access to the Ardiente Members' Club" including the "athletic club" upon a payment of $79. ECF No. 22, Ex. 3 at 18. However, the Court cannot consider this evidence, as it has not been authenticated. See Orr v. Bank of Am., NT & SA, 285 F.3d 764,

- 10 -

upon her first visit to the development, she and her husband identified themselves as potential buyers at the gate and were instructed to go to the clubhouse, where they were able to enter freely without a member of the association or staff supervision; only after they entered the clubhouse were they taken across the street to the sales office. Id., Ex. G at 44.

Defendants dispute whether the development is open to the public at all. Defendants argue that the development is an age-restricted, residential common-interest community comprised of single family homes and that entrance into the development is restricted to those owning or leasing a home in the community, or those persons' guests. ECF No. 20 at 5-6. Defendants do not dispute that after entering the development, an individual may physically access the clubhouse, but maintain that the clubhouse is nonetheless restricted to persons owning and leasing homes in the development and those persons' guests. Because "the clubhouse is Association's private property that is only for the use and enjoyment of the residents of the Community and their guests" it is therefore not a public facility. ECF No. 20 at 8. Therefore, Defendants argue, the clubhouse is exempt under Title III, which "shall not apply to private clubs or establishments exempted from coverage under Title II of the Civil Rights Act of 1964." 42 U.S.C. § 12187. Title II "shall not apply to a private club or other establishment not in fact open to the public." 42 U.S.C. § 2000a(e). Therefore, Defendants contend that a material issue of fact remains as to "whether or not a clubhouse located within a gated community of which members of that community are the only ones with permission to access that clubhouse, is in fact a 'public place.'" ECF No. 147 at 8.

The Court agrees that, based on the record before it, there remain issues of material fact as to whether the clubhouse is in fact open to the public, or whether it is limited to members and their guests. While Plaintiffs' declarations suggest that the development and clubhouse are both open to the public, there is evidence in the record that suggests the clubhouse is limited to those living in the development and their guests. See, e.g., ECF No. 20-1 at 14 (stating, in the HOA's declaration of covenants, conditions, and restrictions, that the common areas in particular "shall be owned by the Association in fee simple or licensed or leased to the Association for the use,

773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").

enjoyment, and convenience of the Owners" including "recreational areas"). The Court finds that there remain issues of material fact that prevent the Court from finding, as a matter of law, that the clubhouse is a place of public accommodation under the ADA. Therefore, the Court denies summary judgment on Plaintiffs' ADA claims alleging violations based on: the Defendants' requirement that Plaintiffs provide documentation that Angel is a service animal; the Defendants' requirement that Deborah Sanzaro verify the need for a service animal; and Defendants' requirement that Deborah Sanzaro prove she is disabled.

### B.  Plaintiffs' Claims Under the FHA

#### a.  Legal Standard

In the Ninth Circuit, "[a] plaintiff can establish an FHA discrimination claim under a theory of disparate treatment, or disparate impact. Additionally, a plaintiff may sue under section 3604(f)(3)(B) of the Fair Housing Act Amendments ('FHAA') if a local municipality refuses to make reasonable accommodations for handicapped housing." Gamble v. City of Escondido, 104 F.3d 300, 304-05 (9th Cir. 1997). Because the Plaintiffs do not bring claims under a theory of disparate impact, the Court considers only their disparate treatment—in other words, discrimination based on disparate treatment— and reasonable accommodation claims.

Regarding disparate treatment, "[t]he standards regarding disparate treatment claims under the ADA are typically identical, and courts accordingly 'interpret them in tandem,' as we do here." Pac. Shores Properties, LLC v. City of Newport Beach, 730 F.3d 1142, 1157 (9th Cir. 2013), cert. denied sub nom. City of Newport Beach, Cal. v. Pac. Shores Props., LLC, 135 S. Ct. 436, 190 L. Ed. 2d 328 (2014). Having articulated the standard for discrimination under the ADA above, the Court addresses the legal standard for Plaintiffs' FHA claim under a theory of failure to make reasonable accommodations.

Regarding reasonable accommodation claims under the FHA, unlawful discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The Ninth Circuit has held that "[t]hese

portions of the statute affirmatively require the City to make reasonable accommodations for handicapped residences." Gamble v. City of Escondido, 104 F.3d 300, 307 (9th Cir. 1997) (citations omitted).

A plaintiff must prove five elements to prevail on an FHA claim under § 3604(f)(3)(B): "(1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation." DuBois v. Ass'n of Apartment Owners of Kalakaua, 453 F.3d 1175, 1179 (9th Cir. 2006). "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." Id. (quoting United States v. Cal. Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir. 1997)).

### b. Analysis

Because the legal framework of FHA discrimination claims under disparate impact are identical those under the ADA, the Court addresses only the question of Plaintiffs' FHA claim for reasonable accommodation. Under the FHA, unlawful discrimination also includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The statute requires reasonable accommodations to be made for handicapped residences. Gamble v. City of Escondido, 104 F.3d 300, 307 (9th Cir. 1997).

The dispute in this case focuses entirely on the third § 3604(f)(3)(B) requirement. The Court has found that Plaintiff was handicapped; that the Defendant knew or should have known of this handicap; that the accommodation—permitting a person to bring her service animal in an otherwise pet-free zone—is reasonable; and that the Defendant refused to make the requested accommodation. However, the Defendants dispute that the requested accommodation was necessary to afford Plaintiff an equal opportunity to "use and enjoy a dwelling."

The FHA defines "dwelling" as "any building, structure, or portion thereof which is

occupied as, or designed or intended for occupancy as, a *residence by one or more families*." 42 U.S.C. § 3602(b) (emphasis added). "A dwelling is thus a living unit designed or intended for occupancy by a family, meaning that it ordinarily has the elements generally associated with a family residence: sleeping spaces, bathroom and kitchen facilities, and common areas, such as living rooms, dens and hallways." <u>Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC</u>, 666 F.3d 1216, 1220 (9th Cir. 2012). The Ninth Circuit has yet to hold that the ADA's definition of a dwelling in the context of reasonable accommodation extends to common areas such as an HOA clubhouse. Further, the Court finds that whether the clubhouse is a dwelling is a fact-driven inquiry not yet briefed by the parties that the Court may not determine given that material facts that remain in dispute. <u>See</u> <u>DuBois</u>, 453 F.3d at 1179; <u>See also</u> <u>Gamble v. City of Escondido</u>, 104 F.3d 300, 307 (9th Cir. 1997) (finding that health care facilities may qualify as dwelling sunder the FHA if they "were necessary to house the physically challenged living in the building").

Because the Court does not find that Plaintiffs have established that the HOA clubhouse constitutes a dwelling under the FHA, the Court therefore denies Plaintiffs' second request finding that the Defendants violated Plaintiffs' rights under the FHA by requesting documentation that Angel is a service animal, or that Plaintiff prove that she is disabled. The Court finds that there are disputed or unclarified facts regarding the use of the clubhouse in relation to the enjoyment of the dwelling. This includes details about the clubhouse itself.

**C. Plaintiffs' Claims Under NRS 651.070**

**a. Legal Standard**

Nevada's state law version of the ADA, NRS 651.075, provides that it "is unlawful for a place of public accommodation to: (a) Refuse admittance or service to a person with a disability because the person is accompanied by a service animal" and "(f) Require proof that an animal is a service animal or service animal in training." NRS 651.075(1); <u>See, e.g.</u>, <u>Clark Cty. Sch. Dist. v. Buchanan</u>, 924 P.2d 716, 719 (Nev. 1996) (applying NRS 651.075(1) to a plaintiff training a service dog).

However, "[a] place of public accommodation may: (a) Ask a person accompanied by an

animal: (1) If the animal is a service animal or service animal in training; and (2) What tasks the animal is trained to perform or is being trained to perform." NRS 651.075(2).

In Nevada, a service animal "has the meaning ascribed to it in 28 C.F.R. § 36.104 and includes a miniature horse that has been trained to do work or perform tasks for the benefit of a person with a disability." NRS § 426.097.

### b. Analysis

Similar to the ADA, NRS 651.075(1)(f) provides that it "is unlawful for a place of public accommodation to . . . [r]equire proof that an animal is a service animal or service animal in training." Because the Court finds that an issue of material fact precludes a finding that the clubhouse is a place of public accommodation, the Court denies Plaintiffs' motion for summary judgment on their NRS claims based on Defendants' requiring that Plaintiff provide documentation that Angel is a service animal and verification of her need for a service animal.

### D. Whether Angel is a Service Animal Under the ADA, FHA, and NRS

Plaintiffs do not seek, by motion or as a request for relief, declaratory judgment stating that Angel is a service animal. Rather, Plaintiffs ask the Court to make a legal determination that Angel is a service animal as part of proving their FHA, ADA, and NRS claims. Specifically, whether Angel is a service animal relates to whether Defendants improperly discriminated against Deborah Sanzaro when they denied her and Angel entrance into the clubhouse. This is permissible under FRCP 56(a), which states that "[a] party may move for summary judgment, identifying each claim or defense — *or the part of each claim or defense* — on which summary judgment is sought." (emphasis added).

In this case, "[w]here . . . the *moving party* bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (citations omitted). The standard for a directed verdict "under Federal Rule of Civil Procedure 50(a) . . . is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-

51 (1986).

For the reasons stated below, the Court does not find that Plaintiffs have met their burden to prove they are entitled to a legal finding at summary judgment that Angel is a service animal based on the record before the Court. Plaintiffs made this exact request, which was denied by this Court upon finding that outstanding issues of material fact precluded the Court making such a legal determination. ECF No. 115. The Court finds that there remain material facts in dispute barring such a determination at this time and denies Plaintiff's motion for partial summary judgment.

Neither ADA, FHA, nor NRS defines what constitutes a service animal, and there are no federal or state regulations that create a certification process for service animals. However, regulations promulgated under the ADA define "service animal" as any guide dog, signal dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability, including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair, or fetching dropped items. 28 C.F.R. § 36.104. See Lentini v. California Ctr. for the Arts, Escondido, 370 F.3d 837, n.1 (9th Cir. 2004). Furthermore, this regulation states that "[t]he work or tasks performed by a service animal must be directly related to the individual's disability." 28 C.F.R. § 36.104. Both of these analyses—the nature of the training, and the relationship the training has to serving the individual's disability—are fact-specific inquiries. See, e.g., Clavon v. Roscoe BK Rest., Inc., 572 F. App'x 487, 488 (9th Cir. 2014) (affirming district court's finding that plaintiff faied to establish a triable issue of fact concerning the tasks the alleged service animal was trained to perform); Davis v. Ma, 568 F. App'x 488 (9th Cir. 2014) ("[G]ranting summary judgment, the district court found that Davis failed to raise a triable issue of fact about whether a service dog could ameliorate his disability.").

Plaintiffs' evidence in support of their argument that Angel is a service animal consists of: Plaintiffs' declarations describing how Angel had been trained to retrieve Deborah Sanzaro's cell phone when it falls on the ground and even retrieve Deborah Sanzaro's walker, thereby aiding with her mobility-related disability at the time of the three incidents; a letter from their veterinarian requesting Angel be authorized to be registered as a service animal; a letter from their veterinarian

that Angel had received the necessary shots and vaccinations; and a patch issued by "Registeredservicesdogs.com" indicating that Angel was a service dog. <u>See</u> ECF No. 145, Motion for Five Orders, Ex. 2. However, the Court does not find that this evidence establishes as a matter of law that Angel was a service animal. <u>See, e.g.</u>, <u>Davis v. Ma</u>, 848 F. Supp. 2d 1105, 1115 (C.D. Cal. 2012), <u>aff'd</u>, 568 F. App'x 488 (9th Cir. 2014) (rejecting the plaintiff's dog's service tags, issued by the city of Rancho Cucamonga, as evidence that the dog "was a properly trained service animal within the meaning of the ADA").

In response, Defendants argue that Angel nonetheless does not qualify as a service animal because it is not apparent that given Angel's size and the fact that she accompanies Deborah Sanzaro by sitting in a basket attached to the walker, Angel is trained to aid Deborah Sanzaro with her disability. However, the legal standard for whether an animal qualifies as a service animal is not whether an animal "appears" to be a service animal. Rather, the inquiry is whether the service animal is trained to aid a disabled person with her specific disability. 28 C.F.R. § 36.104; <u>see also</u> <u>Anderson v. City of Blue Ash</u>, 798 F.3d 338, 354-55 (6th Cir. 2015) (stating in dicta that a disabled child's seizure-response dog trained to assist her while she is sleeping is indisputably a service animal).

Defendants offer no evidence contradicting Plaintiffs' claims but dispute Plaintiffs' representations that Angel was trained to aid in Deborah Sanzaro's disability by questioning the credibility of Plaintiffs' representations. Defendants further state that a trier of fact could find that Angel, a small dog who accompanies Deborah Sanzaro by sitting in a basket attached to her walker, is not capable of aiding Deborah Sanzaro in her mobility-related disability.

Given the highly fact-intensive nature of the inquiry of whether an animal is a service animal and the standard for a moving party who bears the burden of proof at trial, the Court denies summary judgment in the Plaintiffs' favor at this time. The Court does not find that based on Plaintiffs' affidavits alone, there "can be but one reasonable conclusion as to the verdict." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). Rather, the Court finds that reasonable minds could differ as to the evidence. <u>Id.</u> This finding is consistent with cases outside the Circuit, which decline to make legal determinations regarding an animal's classification as a service animal

where the parties contest the animal's ability to aid the disabled plaintiff. See Bronk v. Ineichen, 54 F.3d 425, 429 (7th Cir. 1995) ("Were it acknowledged by the parties in this case that Pierre was a hearing dog providing needed assistance to the plaintiffs, this case might be susceptible to determination as a matter of law. . . . Pierre's skill level, however, was hotly contested, and there was ample evidence to support a jury determination in favor of the defendant. Other than their own protestations and self-serving affidavits which were undermined at trial, plaintiffs offered no evidence that Pierre had ever had any discernible skills.").

Based on the foregoing, the Court therefore denies Plaintiffs' motion for partial summary judgment. ECF No. 145.

## VII. DEFENDANT J.F. SHEA CO., INC.'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 154

Defendant J.F. Shea Co., Inc. ("JFS") filed a Motion for Summary Judgment on October 16, 2014. ECF No. 154. For the reasons discussed below, the Court GRANTS JFS's Motion.

Plaintiffs initially allege in their Complaint that JFS's respondeat superior liability is established by the fact that the Defendant HOA board was employed by JFS. However, Plaintiffs do not argue, with respect to the remaining causes of action, that JFS is liable under a theory of respondeat superior. ECF No. 167 at 7. To the extent that it does, the Court finds this argument unavailing because the evidence indicates that JFS did not employ the HOA board. See Rockwell v. Sun Harbor Budget Suites, 925 P.2d 1175, 1179 (Nev. 1996) ("[A]n actionable claim on a theory of respondeat superior requires proof that (1) the actor at issue was an employee, and (2) the action complained of occurred within the scope of the actor's employment."); ECF No. 154-1.

Rather, Plaintiffs argue that JFS's direct liability is established by the fact that JFS is a declarant for the HOA. Specifically, Plaintiffs argue that declarant JFS was in a position of authority to instruct the HOA as to its allegedly discriminatory actions against the Plaintiffs as declarant, and therefore JFS is directly liable to the Plaintiffs. Therefore, the Court focuses its discussion on whether JFS can be held liable as an alleged declarant of the HOA.

The Court finds no indication in the record before it that establishes that JFS was a declarant

of the HOA. To the contrary, Plaintiffs cite to the provision of the HOA's CC&Rs that expressly identify Centex Homes, not JFS, as the declarant. ECF No. 167 at 5 ("'Declarant' shall mean Centex Homes"). Plaintiffs do not contest that Centex, not JFS, sold Plaintiffs their home, or that Plaintiffs received copies of governing documents from Centex, not JFS.

Further, even if the Plaintiffs established an issue of material fact as to JFS being a Declarant to the HOA, the Court finds that this would not establish liability in this case. "A declarant is the real estate developer of a property who has control of a homeowners' association until a certain percentage of homes are sold and the homeowners can elect the association's first board of directors." Double Diamond v. Second Jud. Dist. Ct., 354 P.3d 641, 642 n.1 (Nev. 2015); see also N.R.S. 116.035. The Court is unaware of any Nevada authority that establishes a declarant's vicarious liability for the HOA's actions in question.

Finding no evidence to establish JFS's direct—or respondeat superior—liability for the discriminatory actions at issue, the Court therefore GRANTS Defendant JFS's Motion. ECF No. 154.

## VIII. DEFENDANTS JOHN LEACH AND LEACH JOHNSON SONG & GRUCHOW'S MOTION FOR SUMMARY JUDGMENT. ECF NO. 225.

Defendants John Leach and Leach Johnson Song & Gruchow filed a Motion for Summary Judgment on March 25, 2015. ECF No. 225. Responses to this Motion were due no later than April 18, 2015. On April 24, 2015, Defendants filed a Notice of Plaintiff's Non-Opposition. ECF No. 234. Plaintiffs filed a Reply to Defendant's Non-Opposition on April 27, 2015. ECF No. 236. Plaintiffs filed an "Opposition to Defendant's Motion for Summary Judgment," which the Court construes as its Response, on May 4, 2014. ECF No. 237.

In their Opposition Brief, Plaintiffs request the Court to deny summary judgment on the basis of the need for additional discovery. This request is denied.

Plaintiffs further request in their Opposition Brief that the Court grant Plaintiffs leave to amend their Complaint to "properly plead the allegations against the law firm." ECF No. 237 at 14. The Court denies this Motion, as it would cause undue delay to the proceedings, and the Court

1    has determined that it may reach a conclusion as to a matter of law on the issue before it.

2    **A. Legal Standard**

3    In determining potential attorney liability to clients, case law in the Ninth Circuit is based

4    upon the application of the <u>Biankanja</u> factors in <u>Goodman v. Kennedy</u>, 556 P.2d 737 (Cal. 1976).

5    <u>See</u> <u>Glenn K. Jackson Inc. v. Roe</u>, 273 F.3d 1192, 1198-99 (9th Cir. 2001); <u>see also</u> <u>Navellier v.</u>

6    <u>Sletten</u>, 262 F.3d 923, 934 (9th Cir. 2001). Because of the lack of Nevada law on point, and given

7    the Ninth Circuit's repeated citing to <u>Goodman</u>, which is directly relevant in this matter, this Court

8    considers <u>Goodman</u> instructive.

9    The Ninth Circuit cited with approval the general rule from <u>Goodman</u> that "an attorney's

10   duty lies solely with the client and does not extend to any other third party." <u>Glenn K. Jackson Inc.</u>

11   <u>v. Roe</u>, 273 F.3d 1192, 1198 (9th Cir. 2001) (citation omitted). The rationale behind this is that an

12   "attorney's preoccupation or concern with the possibility of claims based on mere negligence (as

13   distinct from fraud or malice) by any with whom his client might deal 'would prevent him from

14   devoting his entire energies to his client's interests.'" <u>Id</u>. at 1198-99 (citation omitted). The

15   <u>Goodman</u> factors include (1) "the extent to which the transaction was intended to affect the

16   plaintiff," (2) "the foreseeability of harm to him," (3) "the degree of certainty that the plaintiff

17   suffered injury," (4) "the closeness of the connection between the defendant's conduct and the

18   injury suffered," (5) "the moral blame attached to the defendant's conduct," and (6) "the policy of

19   preventing future harm." <u>Navellier</u>, 262 F.3d at 934 (<u>citing</u> <u>Goodman</u>, 556 P.2d at 742).

20   In <u>Navellier</u>, the Ninth Circuit held that the attorney in question did not assume a duty of

21   care to his client's shareholders; the harm alleged was not a foreseeable result of the attorney's

22   conduct; the connection between the attorney's advice to his client and the alleged injury was

23   remote and tenuous; no moral blame could be attached to the attorney's conduct in advising his

24   client of its obligations under the law; and strong public policy reasons militated against finding

25   any duty owed by the attorney to the client's shareholders. <u>Navellier</u>, 262 F.3d at 934.

26   **B. Discussion**

27   After reviewing the arguments and evidence in this case, the Court concludes that

28   Defendants are entitled to summary judgment on all of Plaintiffs' claims against them. Plaintiffs'

claims against Defendants are based on the Defendants' position as general counsel to the Defendant HOA. Plaintiffs claim that Defendants' "improper" legal advice to the Association renders them liable for the Association's actions. Defendants' liability to Plaintiff therefore rests on two possible theories: 1) Defendants are liable for a third party's (the HOA's) actions against Plaintiffs; and 2) Defendants are directly liable to Plaintiffs under Title III of the ADA. The Court rejects both theories of liability.

First, Defendants cannot be held liable for the HOA's actions taken in furtherance of its role as general counsel for the HOA. Applying the <u>Goodman</u> factors, the Court finds that Defendants are not liable for their client HOA's actions affecting the Plaintiffs. Defendants did not assume a duty of care to Plaintiffs; the harm alleged was not a foreseeable result of Defendants' conduct; the connection between Defendants' advice to the Association and the alleged injury is remote and tenuous; no moral blame can be attached to Defendants' actions; and public policy mitigates against finding the Defendants owed a duty to Plaintiffs.

Second, Defendants cannot be held liable under Title III of the ADA as they do not own, lease or operate the alleged place of public accommodation that Plaintiffs claim to have suffered injury. <u>See</u> <u>Molski v. M.J. Cable, Inc.</u>, 481 F.3d 724, 730 (9th Cir. 2007); <u>see also</u> <u>Lentini v. California Ctr. for the Arts, Escondido</u>, 370 F.3d 837, 849 (9th Cir. 2004) (finding that one owns, leases, or operates a place of public accommodation where he is said "to put or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of; manage.") (citations and quotation marks omitted). In this case, Plaintiffs have failed to demonstrate that the Defendants, attorneys to the Association, own, lease, or operate the clubhouse, and do not sufficiently allege a cause of action under the ADA against the Defendants. Therefore, the Court GRANTS Defendants' Motion for Summary Judgment and dismisses them from the action.

## IX.  DEFENDANT ARDIENTE HOMEOWNERS ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 255

Defendant Ardiente Homeowners Association ("HOA") filed a Motion for Summary Judgment on June 1, 2015. ECF No. 255. In its Motion, Defendant argues that because Plaintiffs

have purportedly conceded that they require expert testimony to prove their case, and have failed to disclose such expert in accordance with FRCP 26, Defendant is entitled to summary judgment.

The Court does not find that Plaintiffs have made such a concession. The quotations to which Defendant cites merely indicate the difficulty Plaintiffs have had, and will have, given the complex issues in the case. A potential evidentiary hurdle or difficulty which is not insurmountable does not provide a basis for summary judgment in this case.

This being the single ground for dismissal in the HOA's Motion for Summary Judgment, the Court DENIES Defendant's Motion. ECF No. 255.

## X. PLAINTIFFS' MOTION TO RECONSIDER ORDER, ECF NO. 118

Plaintiffs ask the Court to reconsider a previous order denying Plaintiffs' Motion for Partial Summary Judgment with regards to their FHA claims. ECF No. 118.

### A. Legal Standard

The Court has broad discretion to review an interlocutory order. See United States v. Smith, 389 F.3d 944, 948 (9th Cir. 2004) ("[A] district court may reconsider its prior rulings so long as it retains jurisdiction over the case."); see also City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 885 (9th Cir. 2001) (emphasis in original) (citation and quotation marks omitted) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, *rescind*, or modify an interlocutory order for cause seen by it to be sufficient.").

Plaintiffs allege Defendants violated the FHA, specifically, U.S.C. Title 42, Sections 3601 et seq. Section 3601 states that "[i]t is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." In relevant part, the FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." 42 USC § 3604(f)(2). Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling . . .

." 42 U.S.C. § 3604(f)(3)(B)

A plaintiff must prove five elements to prevail on an FHA claim under § 3604(f)(3)(B): "(1) that the plaintiff or his associate is handicapped within the meaning of 22 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation." DuBois v. Ass'n of Apartment Owners of Kalakaua, 453 F.3d 1175, 1179 (9th Cir. 2006). "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." Id. (quoting United States v. Cal. Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir. 1997)).

**B. Discussion**

Plaintiffs moved for partial summary judgment on their FHA claims,[2] arguing the HOA violated the FHA by prohibiting Deborah Sanzaro from bringing Angel into the HOA clubhouse, thereby failing to reasonably accommodate her and consequently discriminating against her. ECF No. 92. The Court denied this Motion. ECF No. 115. The Plaintiffs filed a Motion to Reconsider. ECF No. 118.

The Court considers Plaintiffs' claim in light of the five factors required to bring a successful FHA claim, emphasizing that given the nature of this "highly fact-specific inquiry," there must not be any remaining material fact in dispute for the Court to find for the Plaintiffs.

The Court previously found that the Plaintiff was handicapped and that the Defendant knew or should have known of Deborah Sanzaro's handicap. ECF No. 115. The parties also agree that allowing service animals in the clubhouse is a reasonable accommodation. Therefore, the first, second, and fourth factors have been satisfied. Additionally, the Court found that the Defendant

---

[2] At oral argument and in their Motion to Reconsider, Plaintiffs argue that they also had moved for partial summary judgment on their state law claims, and the Court erred in failing to review these claims. ECF No. 118 at 3. The Court has reviewed the Motion for Partial Summary Judgment and does not find that the Plaintiffs moved for summary judgment on their state law claims and therefore does not address them in its current Order. Similarly, the Court does not address Plaintiffs' ADA claims, given that in their original Motion for Partial Summary Judgment, Plaintiffs state that "[t]he alleged violations of Title III of the American with Disabilities Act (ADA) by the defendants is not an issue in this Motion for Partial Summary Judgment." ECF No. 92 at 12.

refused to make the requested accommodation—to allow Plaintiff to be accompanied by Angel in the clubhouse— on three separate occasions.

However, as previously noted, this Court finds that an issue of material fact remains that prevents the Court from determining this Motion as a matter of law under the FHA (and ADA) under the theories of reasonable accommodation or disparate treatment. The Court therefore DENIES Plaintiffs' Motion for Reconsideration (ECF No. 118).

## XI.     MOTION FOR DEFAULT JUDGMENT, ECF NO. 139

Rule 55 of the Federal Rules of Civil Procedure provides for default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The granting of a default judgment is a two-step process directed by Rule 55. Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). The first step is an entry of default, which must be made by the clerk following a showing, by affidavit or otherwise, that the party against whom the judgment is sought "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The second step is entry of a default judgment under Rule 55(b), a decision which lies within the discretion of the court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

Factors which a court, in its discretion, may consider in deciding whether to grant a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of the substantive claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute of material fact, (6) whether the default was due to excusable neglect, and (7) the Federal Rules' strong policy in favor of deciding cases on the merits. Eitel, 782 F.2d at 1471-72. If an entry of default is made, the court accepts all well-pleaded factual allegations in the complaint as true; however, conclusions of law and allegations of fact that are not well-pleaded will not be deemed admitted by the defaulted party. DirecTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007). A court must find "extreme circumstances" to enter default judgment. See United States v. Signed Personal Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091-92 (9th Cir. 2010) (finding that default judgment was unwarranted where defendant clearly made a timely effort to defend against the suit).

The Court finds that there are not sufficient facts to grant an entry of default or default judgment against J.F. Shea under Rule 55. Defendant J.F. Shea properly defended by filing an Answer to Plaintiffs' Complaint on July 22, 2014. ECF No. 133. While it is true that Defendant did not personally serve Plaintiffs, Plaintiffs have failed to demonstrate how this lack of direct service constitutes an "extreme circumstance" that prejudiced the Plaintiffs to the extent that the Court should enter default judgment against the Defendant. The Plaintiffs have not demonstrated that they were unaware of J.F. Shea's Answer or failed to receive a copy of it. The Plaintiff has not demonstrated how they were prejudiced. The record does not indicate that J.F. Shea failed to participate in the case or litigation. The Court does not find that the Plaintiffs have asserted sustainable claims against J.F. Shea. There is also a policy preference for having cases decided on the merits. See Eitel, 782 F.2d at 1472 (stating "the general rule that default judgments are ordinarily disfavored" and that "[c]ases should be decided upon their merits whenever reasonably possible.") For all of these reasons, the Court DENIES the Plaintiffs' Motion for Default Judgment against Defendant J.F. Shea.

## XII. PLAINTIFFS' MOTION TO RECONSIDER, ECF NO. 231

Plaintiffs' Motion to Reconsider concerns Order ECF No. 228, in which Magistrate Judge Hoffman denied Plaintiff's previous Motion to Reconsider. Magistrate Judge Hoffman's original order (ECF No. 209) struck Plaintiff's proposed expert witness.

On February 13, 2015, Magistrate Judge Hoffman granted Defendant Leach Johnson Song & Gruchow's Motion to Strike Plaintiff's proposed expert witness as untimely as required by Rule 26. Plaintiff filed a Motion to Reconsider Order on March 30, 2015. ECF No. 227. Magistrate Judge Hoffman denied this Motion on the grounds that Plaintiff's two arguments, "(1) Defendant failed to meet and confer prior to filing the motion, and (2) Defendant was previously given 'leeway' to file pleadings late," failed to offer support for reconsideration. ECF No. 228. Plaintiff now raises this Motion with this Court.

"As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, *rescind*, or modify an interlocutory order for cause seen by it to

be sufficient." <u>City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper</u>, 254 F.3d 882, 885 (9th Cir. 2001) (emphasis in original) (citation and quotation marks omitted). Because the Court finds no clear error on the part of Magistrate Judge Hoffman, the Court denies the Plaintiffs' Motion.

Magistrate Judge Hoffman denied Plaintiff's first Motion to Reconsider, finding unpersuasive Plaintiff's two arguments: (1) Defendant failed to meet and confer prior to filing the motion, and (2) Defendant was previously given "leeway" to file pleadings late. ECF No. 228. Specifically, Magistrate Judge Hoffman found, and this Court agrees, that Defendant's motion to strike Plaintiff's proposed expert was filed pursuant to Rule 37 (concerning Failure to Make Disclosures or to Cooperate in Discovery; Sanctions), which does not require a party to meet and confer. Judge Hoffman denied the second argument on the basis that "[b]riefing on motions is not equivalent to failing to make proper disclosures under Rule 26." ECF No. 228. The Court does not find a basis for reconsidering this order.

The Court therefore DENIES Plaintiff's Motion to Reconsider.

## XIII. DEFENDANT J.F. SHEA CO., INC.'S MOTION TO AMEND/CORRECT ANSWER, ECF NO. 223.

Defendant JFS seeks to amend its Answer to assert a crossclaim against Defendant Ardiente Homeowners Association, LLC. Defendant JFS alleges that it is indemnified by the HOA, and the HOA's refusal to defend or indemnify JFS is the basis for its current crossclaim.

### A. Legal Standard

Amendment of pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure, provided that leave to amend is requested prior to the expiration of the deadline for amending pleadings as set forth in the scheduling order, if one has been entered. <u>See</u> <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946, 952 (9th Cir. 2006); <u>see also</u> <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1294 (9th Cir. 2000) (stating that Rule 16 applies where a court has "filed a pretrial scheduling order that established a timetable for amending the pleadings, and the deadline [has] expired" before the filing of the motion to amend). According to Rule 15, courts should freely

grant a party leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts are to apply this policy with "extreme liberality." Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (citation and quotation marks omitted). In general, leave to amend under Rule 15 should be denied only where there is a "showing of bad faith, undue delay, futility, or undue prejudice to the opposing party"—considerations commonly referred to as the Foman factors. Chudacoff v. Univ. Med. Ctr. of S. Nevada, 649 F.3d 1143, 1152 (9th Cir. 2011) (citation omitted); Foman v. Davis, 371 U.S. 178, 182 (1962). Prejudice is the "touchstone" of the Rule 15(a) analysis and therefore receives the greatest weight. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (citations omitted). "Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Id. (emphasis in original) (citations omitted).

**B. Discussion**

The Court finds that the Association has not carried its burden of demonstrating that it will be prejudiced by the amendment, nor has it shown that any of the remaining Foman factors strongly favor denial of leave to amend. Therefore, in light of the Federal Rules' liberal policy favoring amendment, the Court grants JFS leave to amend its Answer to assert a crossclaim against the Association.

First, there is no evidence before the Court that JFS unduly delayed or filed its motion in bad faith. JFS timely sought leave to amend its Answer within the deadline established by the Court, which the Association does not dispute. Moreover, JFS states that it seeks to amend its based on the failure to reach an understanding regarding indemnity with its co-party, the Association, during the course of discovery. The Court therefore finds that JFS's motion, made after some discovery had been performed that allegedly provided certain information about the Association's alleged duty to defend and indemnify it, does not constitute bad faith or undue delay.

Second, the Association has not shown that JFS's proposed amendment would be futile. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Sweaney v. Ada Cnty., Idaho, 119 F.3d 1385, 1393 (9th Cir. 1997) (citation and quotation marks omitted). This test is

identical to the standard used for evaluating the legal sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>Miller v. Rykoff-Sexton</u>, 845 F.2d 209, 214 (9th Cir. 1988). Under that standard, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." <u>Faulkner v. ADT Sec. Servs., Inc.</u>, 706 F.3d 1017, 1019 (9th Cir. 2013).

JFS's proposed Amended Answer alleges that the Association's governing documents require it to provide JFS a full defense and indemnity in this matter, and that JFS has suffered legally cognizable damages as a direct result of the Association's failure to do so. Mot. to Amend at 5. Taken in the light most favorable to JFS, the proposed Answer asserts a valid crossclaim pursuant to Rule 13(g), which states that "[a] pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."

Third, and most crucially, the Association has not met its burden of demonstrating that it will be prejudiced by the amended pleading. Although the Association argues that it will have "no time to conduct discovery on these issues," it does not dispute that the Association and JFS have been in ongoing discussions throughout discovery regarding the question of indemnity that JFS now wishes to assert. Therefore, the Association has not shown that it would be prejudiced by, for example, being forced to defend against "different legal theories" or provide "proof of different facts." <u>AmerisourceBergen</u>, 465 F.3d at 953. In addition, while the amendment seeks to add a crossclaim, the Association has not demonstrated that it has incurred litigation expenses "that could have been easily avoided" had JFS brought a class action complaint in the first instance. <u>Id</u>. at 953. Therefore, the Court does not find that the Association would be prejudiced by the proposed amendment.

For these reasons the Court GRANTS Defendant JFS's Motion to Amend its Answer to Assert a Crossclaim against the Association.

## XIV. DEFENDANT'S LEACH JOHNSON SONG & GRUCHOW MOTION TO RECONSIDER, ECF NO. 212

In light of the Court's granting Defendants' Motion for Summary Judgment, the Court DENIES as moot Defendants' Motion to Reconsider.

## XV. PLAINTIFFS' MOTION TO RECONSIDER, ECF NO. 293

Last, Plaintiffs move this court to reconsider dismissal of 95 causes of action, which are state law claims related to tort and contract law. The Court finds that the Ninth Circuit affirmed this Court's dismissal of the state law claims and therefore DENIES Plaintiffs' motion to reconsider.

On August 22, 2011, Defendants moved to dismiss this case. ECF No. 9. On November 18, 2011, this Court granted the motion and issued an order dismissing Plaintiffs' case ("the November 18, 2011 Order"). ECF No. 33. Plaintiffs asked this Court reconsider this Order, which this Court denied. ECF Nos. 35, 41. Plaintiffs appealed the Court's dismissal of their case to the Ninth Circuit. ECF No. 42. The Ninth Circuit affirmed in part, vacated in part, and remanded the November 18, 2011 Order. ECF No. 55. Specifically, the Ninth Circuit reversed dismissal of the FHA and ADA claims while affirming dismissal of the remaining claims; with regards to the state law claims in particular, the Ninth Circuit found that "the Sanzaros failed to establish fraud, misrepresentation, or misconduct by the opposing party." ECF No. 55 at 3. On remand, this Court clarified this interpretation of the Ninth Circuit's ruling and stated that the 95 state law causes of action were dismissed, and the only remaining 7 causes of action related to the ADA and FHA. The Court finds this reading is consistent with the Ninth Circuit's ruling and may not at this time reverse the Ninth Circuit's decision.

Therefore, the Court DENIES Plaintiffs' motion to reconsider. ECF No. 293.

. . .

. . .

. . .

## XVI. CONCLUSION

For the reasons stated above:

1. IT IS ORDERED that the Plaintiff's Motion for Reconsideration (ECF No. 118) is DENIED.

2. IT IS ORDERED that the Plaintiff's Motion for Default Judgment against J.F. Shea Co, Inc. (ECF No. 139) is DENIED.

3. IT IS ORDERED that the Plaintiff's Motion for Partial Summary Judgment (ECF No. 145) is DENIED.

4. IT IS ORDERED that Defendant J.F. Shea Co., Inc.'s Motion for Summary Judgment is GRANTED. ECF No. 154.

5. IT IS ORDERED that the Defendant J.F. Shea Co., Inc.'s Motion to Amend/Correct Answer (ECF No. 223) is GRANTED.

6. IT IS ORDERED that Defendants John Leach and Leach Johnson Song & Gruchow's Motion for Summary Judgment (ECF No. 225) is GRANTED. IT IS FURTHER ORDERED that their Motion to Reconsider (ECF No. 212) is DENIED.

7. IT IS ORDERED that the Plaintiff's Motion to Reconsider (Order ECF No. 231) is DENIED.

8. IT IS ORDERED that Plaintiff's Motion to Reconsider (ECF No. 293) is DENIED.

9. IT IS ORDERED that Defendant Ardiente Homeowner Association's Motion for Summary Judgment (ECF No. 255) is DENIED.

DATED November 29, 2017.

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE